**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TIMOTHY S. ARMSTRONG and** | ) | |
| **KAY S. ARMSTRONG, individually and as** | ) | |
| **husband and wife,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-CV-377-CVE-JFJ** |
| | ) | |
| **HEALTH CARE SERVICE CORPORATION,** | ) | |
| **a mutual legal reserve company d/b/a** | ) | |
| **BlueCross and BlueShield of Oklahoma,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Dismiss Counts II, III, IV, and V of Plaintiffs' Complaint and Memorandum in Support (Dkt. # 8). Defendant Health Care Service Corporation (HCSC) asks the Court to dismiss all of plaintiffs' claims except for plaintiff Timothy Armstrong's breach of contract claim. HCSC argues that it had a legitimate basis to deny his request for preapproval of proton beam treatment (PBT) after he received a diagnosis for prostate cancer, and Timothy Armstrong has no legal basis to proceed with anything other than a breach of contract claim challenging the denial of benefits under a health insurance policy. Plaintiffs responds that HCSC held Timothy Armstrong's request for PBT to a higher standard of care than other types of radiation treatment, which Oklahoma law specifically forbids, and HCSC breached the implied covenant of good faith and fair dealing by denying Timothy Armstrong's request for preapproval of PBT. Plaintiffs also argue that HCSC's conduct also constitutes negligence per se and intentional infliction of emotional distress.

## I.

Plaintiffs purchased a health insurance policy from HCSC and plaintiffs allege that they had promptly paid all premiums necessary to keep the policy in effect.  Dkt. # 2, at 16-17.  Timothy Armstrong was diagnosed with prostate cancer in May 2021, and he sought treatment from the Oklahoma Proton Center after receiving his cancer diagnosis.  Id. at 17.  Timothy Armstrong's medical providers at Oklahoma Proton Center recommended PBT, and he alleges that this treatment was recommended "given the lesser adverse side effects and toxicity profile with that method of treatment."  Id.  Plaintiffs further allege that PBT is not considered an experimental treatment, and PBT reduces the amount of radiation to which healthy body tissues are exposed as part of radiation treatment.  Id. at 18.

On August 6, 2021, Oklahoma Proton Center submitted a request to HCSC for preapproval of PBT for Timothy Armstrong, and the request included a comparison plan showing that traditional radiation treatments would be less effective than PBT.  Id. at 19.   HCSC denied the request for preapproval three days later because the treatment was deemed "not medically necessary."  Id.  The denial states that other treatment options had been recommended to Timothy Armstrong, such as surgery or external radiation treatment.  Id.  On August 10, 2021, Oklahoma Proton Center filed a provider appeal of HCSC's denial of the request for preapproval, and the appeal was denied the next day.  Id. at 20.  HCSC stated that PBT was considered "experimental and investigational to be used in this manner" and it had not been shown to improve patient outcomes.  Id.  On September 9, 2021, Timothy Armstrong submitted a request for an independent external review of his request for preapproval for PBT, and the external review upheld the initial denial of the request for preapproval of PBT.  Id. at 21.  The external review committee found that no comparison plan had been

2

submitted showing that traditional radiation treatments would be ineffective, and PBT was not considered medically necessary due to the availability of other treatment options. Id. He alleges that he has exhausted all possible appeals of the denial of his request for preapproval for PBT. Plaintiffs alleged that the denial of the recommended PBT was arbitrary, and HCSC has approved this treatment for other patients. Id. at 21-22.

Plaintiffs filed this case in Tulsa County District Court alleging claims of breach of contract (Count I), bad faith (Count II), negligence per se (Count III), intentional infliction of emotional distress (Count IV), and punitive damages (Count V). The claims of breach of contract, bad faith, and negligence per se are asserted by Timothy Armstrong only, and both plaintiffs allege a claim of intentional infliction of emotional distress against HCSC. HCSC removed the case to federal court based on diversity of citizenship, and HCSC has filed a motion to dismiss all of plaintiffs' claims except for the breach of contract claim. Dkt. # 8.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions."

Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

HCSC argues that it had a legitimate basis to deny Timothy Armstrong's request for pre-approval of PBT, and HCSC promptly investigated and issued decisions on his subsequent requests for review of the initial denial. Dkt. # 8, at 12-14.  HCSC contends that its actions do not constitute negligence per se or intentional infliction of emotional distress, and HCSC also asks the Court to dismiss plaintiff's demand for punitive damages.  Id. at 16-22.  Timothy Armstrong responds that PBT is more effective and less harmful to the patient than traditional radiation treatments, and HCSC was contractually obligated to approve his request for PBT. Dkt. # 18, at 16-20.  Plaintiffs also argue that HCSC committed negligence per se by violating an Oklahoma statute that expressly forbids insurers from holding PBT to a higher standard of care, and HCSC's repeated denials of Timothy Armstrong's request for pre-approval of PBT qualifies as extreme and outrageous conduct under Oklahoma law.  Id. at 22-29.

**A.**

HCSC argues that Timothy Armstrong has not adequately alleged a bad faith claim, because the facts alleged in the petition establish that HCSC had a legitimate basis to deny Timothy Armstrong's request for preapproval for PBT.  Dkt. # 8, at 12-14.  Timothy Armstrong responds that OKLA. STAT. tit. 36, § 6060.9b expressly prohibits an insurer from treating requests for PBT differently than any other type of cancer radiation treatment, and HCSC's repeated denials of appeals filed by Timothy Armstrong and his providers constitute unreasonable delay in paying a valid claim for coverage under the insurance policy.  Dkt. # 18, at 16-20.

The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought."  Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977).  "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'"  Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)).  To succeed on a bad faith claim, plaintiffs "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiffs'] claim."  Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019).  According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith.  Shotts, 943 F.3d at 1314-15.  The Court considers 1) "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim"; and 2) "if the court determines

5

there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith." Id. at 1315.

In this case, the Court is ruling on a motion to dismiss and the Court must view the well-pleaded allegations of the petition in a light most favorable to plaintiffs.[1]  Plaintiffs argue that HCSC held PBT to a higher standard of reliability and efficacy that ordinary radiation treatment in violation of § 6060.9b, which provides:

> A.  A health benefit plan, as defined in subsection C of Section 6060.4 of Title 36 of the Oklahoma Statutes, that provides coverage for cancer therapy shall be prohibited from holding [PBT] to a higher standard of clinical evidence for medical policy benefit coverage decisions than the health plan required for coverage of any radiation therapy treatment.
>
> B.  Nothing in this section shall be construed to mandate coverage of [PBT] by a health benefit plan.

OKLA. STAT. tit. 36, § 6060.9b. Plaintiffs assert that PBT is medically necessary under the circumstances, and HCSC's repeated denials of Timothy Armstrong's request for pre-approval of PBT constitutes bad faith.  Construing the allegations in a light most favorable to plaintiff, the Court finds that plaintiff has stated a bad faith claim against HCSC.  Oklahoma law expressly requires an insurer who covers PBT to refrain from holding this type of treatment to a "higher standard of clinical evidence" than other types of cancer treatment, and plaintiffs have alleged that HCSC improperly deemed PBT as "experimental" and not medically necessary.  More problematic for HCSC are plaintiffs' allegations that HCSC's explanation for denying the claim for preapproval of PBT shifted after each request for review of the claim.  Plaintiffs allege that HCSC initially denied

---

[1]     Both plaintiffs and defendants ask the Court to consider evidence outside the pleadings when ruling on the motion to dismiss.  The Court finds that it is unnecessary to consider evidence outside the pleadings, and the Court will rely exclusively on the allegations of the petition when ruling on the motion to dismiss.

the claim because other types of cancer treatment were equally effective to PBT, and PBT was medically unnecessary due to the availability of other types of treatment.  Dkt. # 2, at 19.  The next denial stated that Timothy Armstrong's policy did not cover PBT for the treatment of prostate cancer.  Id. at 20.  Plaintiffs allege that HCSC denied the final appeal on the ground that PBT was "experimental and investigational" as used to treat prostate cancer.  These allegations are sufficient at the pleading stage to raise a question of fact as to whether there was a legitimate coverage dispute.  Repeated denials of a claim are not sufficient to establish that an insurer acted in bad faith, but plaintiffs have alleged sufficient facts to call into question whether HCSC had a legitimate basis to dispute coverage.[2]  HCSC's motion to dismiss plaintiffs' bad faith claim is denied.[3]

**B.**

HCSC argues that § 6060.9b does not create a private right of action or support a claim of negligence per se, and Count III of plaintiffs' petition should be dismissed.  Timothy Armstrong relies on the Oklahoma Supreme Court's decision in Howard v. Zimmer, 299 P.3d 463 (2013), and argue that § 6060.9b creates a tort duty that is enforceable under a theory of negligence per se.  Dkt.

---

[2]     The parties vigorously dispute whether PBT was actually medically necessary under the circumstances.  A motion to dismiss is not the appropriate forum to consider this fact-intensive dispute, and the Court will accept as true plaintiff's well-supported allegations that PBT was a necessary and effective treatment for prostate cancer.  However, HCSC may raise this issue in a motion for summary judgment following pretrial discovery.

[3]     The Court's finding that plaintiffs have adequately alleged a bad faith claim also requires the Court to deny HCSC's motion to dismiss plaintiffs' demand for punitive damages.  Plaintiffs have improperly pled punitive damages as a separate claim, but punitive damages are available as a remedy for a bad faith claim under Oklahoma law.  Therefore, plaintiffs are permitted to seek punitive damages as a remedy for bad faith even if their claims of negligence per se and intentional infliction of emotional distress are dismissed; however, Count V should be dismissed because punitive damages are a remedy for bad faith, not a separate claim.

# 18, at 23-24.  He acknowledges that the statute does not expressly create a private right of action, but he argues that a private right of action should be implied under Oklahoma law.  Id. at 25.

A plaintiff seeking to proceed with a claim of negligence must prove "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury was proximately caused by the defendant's breach."  Thompson v. Williams, 406 P.3d 599, 600 (Okla. Civ. App. 2017).  Under Oklahoma law, a plaintiff is permitted to refer to statutory law to show that the defendant owed a duty to the plaintiff, rather than a common law duty, and this is known as negligence per se.  Howard v. Zimmer, 299 P.3d 463, 467 (Okla. 2019).  To establish that a statute can be substituted for the standard of care, the plaintiff "must demonstrate the claimed injury was caused by the violation, and was of the type intended to be prevented by the statute.  Finally, the injured party must be one of the class intended to be protected by the statute."  Id.  Not every statute or regulation can be used to provide a tort duty, and Oklahoma law requires that the statute must impose a positive objective standard that is "fixed" and "the same in all circumstances."  Smith v. Barker, 419 P.3d 327, 333 (Okla. Civ. App. 2017).

Timothy Armstrong cites Howard and claims that he is "precisely" in the same position as the Howard plaintiff.[4]  Dkt. # 18, at 24.  The Court disagrees and finds that there are important

---

[4]     The Oklahoma Court of Civil Appeals has determined that an insured cannot assert an ordinary negligence claim against an insurer.  Tolman v. Reassure America Life Ins. Co., 391 P.3d 120, 123-24 (Okla. Civ. App. 2015).  A claim of negligence per se simply substitutes a statutory duty for a common law tort duty, and Tolman would also bar a claim of negligence per se claim against an insurer.  HCSC cites Tolman but does not specifically argue that Tolman bars a negligence per se claim against an insurer.  Dkt. # 8, at 19.  It appears that Tolman would also bar a negligence per se claim against an insurer.  However, this argument was not clearly raised or developed by HCSC, and the Court will consider the parties' arguments concerning the viability of Timothy Armstrong's negligence per se claim against HCSC.

distinctions between Timothy Armstrong and the <u>Howard</u> plaintiff.  In <u>Howard</u>, the plaintiff underwent knee replacement surgery and he alleged that the knee implant was unsuccessful due to the manufacturer's failure to remove oil from the product before it was implanted.  299 P.3d at at 465-66.  The case eventually reached the Oklahoma Supreme Court on a certified question concerning whether a federal regulation could be used to supply the tort duty for a negligence per se claim under Oklahoma law.  The regulation required a manufacturer to establish and maintain a procedure for removing manufacturing materials from a medical device and actually document the removal of the manufacturing material from the device.  21 C.F.R. § 820.70(h).  The Oklahoma Supreme Court determined that a federal regulation could provide the basis for a negligence per se claim, and the court answered the certified question by finding that the plaintiff's negligence per se claim would be recognized under Oklahoma law.  <u>Howard</u>, 299 P.3d at 474.  However, the court expressly stated that it was not considering whether the plaintiff's injury was caused by violation of the regulation or was the type of injury that the regulation sought to prevent.  <u>Id.</u> at 467.  In this case, Timothy Armstrong is not seeking to hold HCSC liable based on a federal regulation, and Howard has no bearing on whether Timothy Armstrong has a cognizable negligence per se claim.  HCSC does not dispute that a state statute can provide the basis for a negligence per se claim, but HCSC argues that Timothy Armstrong has failed to adequately allege that § 6060.9b is the type of statute that provides a tort duty for a negligence per se claim.

Timothy Armstrong's negligence per se claim fails for multiple reasons.  Most importantly, the statute fails to provide any positive objective standards that can easily be applied to determine if a defendant's conduct violates the statute, and the finder of fact would be required to evaluate the facts and apply ordinary negligence principles to determine if the defendant violated a tort duty to

the plaintiff.  Smith, 419 P.3d at 333.  Section 6060.9b states that an insurer "shall be prohibited from holding [PBT] to a higher standard of clinical evidence for medical policy benefit coverage decisions than the health plan required for coverage of any radiation therapy treatment," but the statute does not actually mandate coverage for PBT or provide any specific standards for insurers to follow when evaluating a claim for coverage of PBT.  At most, the statute can be viewed as guidance to insurers when evaluating claims for coverage of PBT, but it does not provide a specific or enforceable obligation that can be substituted as a tort duty for the purpose of a negligence per se claim.  For the same reason, Timothy Armstrong has not adequately alleged the causation element of a negligence per se claim.  An insurer can comply with § 6060.9b and still deny a claim for coverage of PBT, as long as the insurer does not hold PBT to a higher standard of care than other types of radiation treatment.  An insured can argue that the insurer breached the terms of the specific insurance policy by denying a request to cover PBT, but this does not automatically support an implication that the insurer held PBT to a higher standard.  Timothy Armstrong's negligence per se claim is based on an assumption that HCSC  must have held PBT to a higher standard because Timothy Armstrong's claim for preapproval of PBT was denied.  However, plaintiffs also allege that HCSC denied the claim due to a lack of medical necessity and that PBT was ineffective to treat prostate cancer, and these allegations do not support an inference that a violation of § 6060.9b actually caused an injury to Timothy Armstrong.  Plaintiff has not adequately alleged a negligence per se claim and Count III of the petition is dismissed without leave to amend.[5]

---

[5]     The parties also dispute whether § 6060.9b impliedly creates a private right of action, but the Court has determined that Timothy Armstrong's negligence per se claim should be dismissed for other reasons.  Therefore, it is unnecessary for the Court to consider whether § 6060.9b gives rise to a private right of action.

**C.**

HCSC argues that plaintiffs have not adequately alleged a claim for intentional infliction of emotional distress, because plaintiffs have not alleged any facts suggesting that HCSC engaged in extreme or outrageous conduct or that plaintiffs suffered extreme emotional distress. Dkt. # 8, at 20-22. Plaintiffs respond that HCSC intentionally engaged in bad faith conduct by repeatedly and in bad faith denying Timothy Armstrong's claim for pre-approval of PBT, and HCSC knew that its conduct would result in the denial of necessary medical care to Timothy Armstrong. Dkt. # 18, at 28-29.

According to the Oklahoma Supreme Court, "[t]o recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002). "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." Id. The second element of this tort, whether the conduct was extreme and outrageous, "requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." Id. The fourth element, whether the resulting emotional distress was severe, "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Id. at 736 (internal quotations and alterations omitted). "While emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea,

it is only where the emotional distress is extreme that liability arises." Id. (internal quotations omitted).

Plaintiffs' allegations are wholly insufficient to state a claim of intentional infliction of emotional distress.  The denial of an insurance claim is an ordinary part of the relationship between an insurer and insured and, no matter how much the insured disagrees with the denial, this does not constitute extreme and outrageous conduct on the part of the insurer.  In this case, plaintiffs claim that Timothy Armstrong and his medical providers filed multiple appeals of the original denial, and the arbitrary and improper denials of his appeals could reasonably be expected to cause emotional distress.  Dkt. # 2, at 30.  Even though the Court has found that plaintiff has sufficiently alleged a bad faith claim, this does not automatically make HCSC's conduct extreme and outrageous for the purpose of an intentional infliction of emotional distress claim.  The Court also notes that plaintiffs only generally allege that they suffered extreme emotional distress, and plaintiffs allegations concerning this element are insufficient.  Count IV of plaintiffs' petition fails to state a claim upon which relief can be granted and is dismissed without leave to amend.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Counts II, III, IV, and V of Plaintiffs' Complaint and Memorandum in Support (Dkt. # 8) is **granted in part** and **denied in part**: Timothy Armstrong's negligence per se claim (Count III), plaintiffs' claim of intentional infliction of emotional distress (Count IV), and punitive damages claim (Count V) are dismissed without leave to amend, but HCSC's motion is denied as to dismissal of plaintiff's bad faith claim, as to which Timothy Armstrong may seek punitive damages.  Kay S. Armstrong is hereby **terminated** as a party to this action, and the caption shall so reflect henceforth.

**IT IS FURTHER ORDERED** that the parties file a Joint Status Report no later than

**February 6, 2023.**

**DATED** this 23rd day of January, 2023.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE